In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

 PENGUIN PROPERTIES, LLC, ) No. ED109087
 )
 Respondent, )
 )
 vs. )
 ) Appeal from the Circuit Court of
 KING DAVID FASHIONS, LLC AND ) St. Louis County
 DAVID HUGHES, )
 )
 Defendants, ) Honorable John F. Newsham
 )
 and )
 )
 TRANSWOOD, INC., )
 )
 Appellant. ) Filed: June 22, 2021

 Introduction

 Transwood, Inc. (“Transwood”), a non-party to the underlying rent and possession matter

from which this garnishment action follows, appeals from the judgment of the Circuit Court of St.

Louis County granting the motion for summary judgment filed by the plaintiff/garnishor in this

matter, Penguin Properties, LLC (“Penguin”). Penguin filed its motion for summary judgment in

connection with its writ of garnishment served on garnishee Transwood. This garnishment action

arose from the consent judgment Penguin had previously obtained against the defendants in this

matter, David Hughes (“Hughes”) and King David Fashions, LLC (“King David”), for past due

rent and possession of the subject premises. In granting Penguin’s motion for summary judgment,
the circuit court held that Transwood was liable to Penguin, pursuant to § 525.0801, for the then-

outstanding amount of the garnishment because: (1) as a result of Transwood’s settlement of a

personal injury matter that Hughes had filed against it, Transwood owed a separate debt to Hughes

that existed during the garnishment period; and (2) despite notice of the garnishment, Transwood

failed to pay any of the garnishment amount to Penguin directly, or in the alternative, failed to

interplead the garnishment amount into the circuit court pursuant to § 525.070; rather, Transwood

fully satisfied its debt to Hughes with two checks from Transwood’s liability insurance carrier.

 Transwood raises two points on appeal. In its first point, Transwood argues that the circuit

court erred in granting Penguin’s motion for summary judgment because it never had control or

possession of the two settlement checks that satisfied its debt to Hughes. In its second point,

Transwood argues that the circuit court erred in granting Penguin’s motion for summary judgment

because Transwood was an improper party to garnish in the first place. We affirm.2

 I. Factual and Procedural Background

 Viewed in the light most favorable to Transwood, and giving Transwood the benefit of all

reasonable inferences therefrom, the record reveals the following relevant facts:

A. Penguin’s Rent and Possession Action against Hughes.

 Penguin filed suit against Hughes and King David to collect outstanding rent and other

amounts due under the parties’ commercial lease agreement, as well as to recover possession of

the subject premises owned by Penguin (the “Rent and Possession Action”). Penguin obtained a

1
 All statutory references are to Mo. Rev. Stat. Cum. Supp. 2018.
2
 Penguin has also filed a motion for damages for frivolous appeal, which asserts that the arguments raised by
Transwood in this appeal “are not warranted by existing law nor is there a good faith argument for the extension,
modification, or reversal of existing authority or for the establishment of new law in violation of the requirements of
Rule 55.03.” Although we affirm the trial court’s decision in favor of Penguin, we do not believe that Transwood’s
appeal was frivolous in large part because, as further explained below, we recognize that the unusual facts of this case
present a case of first impression in Missouri, and thus, there is no clear-cut answer under existing Missouri law.
Accordingly, Penguin’s motion is denied.

 2
consent judgment in the amount of $13,763.36 for rent due and agreed to stay execution on the

judgment for possession of the subject premises pending Penguin’s timely receipt of rent payments

set out in the parties’ lease agreement. Eventually, Penguin obtained possession, and the total

amount then due under the Consent Judgment was $14,263.36, plus $36.00 in costs.

B. Hughes’ Personal Injury Action against Transwood.

 Hughes was involved in an automobile accident with an employee of Transwood and filed

suit for his personal injuries and property damage in the Circuit Court of St. Louis County against

Transwood and its employee. The suit was subsequently transferred to the United States District

Court for the Eastern District of Missouri on the basis of diversity jurisdiction. Hughes was

represented by the law firm of Holland Injury Law LLC (“Holland Law”), and attorney William

Holland (“Holland’). Transwood was represented by the law firm of Roberts Perryman, P.C.

(“Roberts Perryman”) and attorney Ted Perryman (“Perryman”), who continue to represent

Transwood in this garnishment action.

C. Settlement of the Personal Injury Lawsuit.

 The parties settled the personal injury action in principle on May 10, 2018. Hughes

subsequently executed a written document titled Settlement Agreement and Release of All Claims

(the “Settlement Agreement”), dated May 17, 2018, in which Transwood agreed to pay Hughes:

(a) $20,000.00 for settlement of Hughes’ bodily injury claim; and (b) $5,000.00 for settlement of

Hughes’ property damage claim. In addition, Hughes specifically agreed to pay “all liens

including any lien of Penguin Properties from the money received in this settlement and to

indemnify and hold harmless the Releasees from any and all present or future claims or liens.”3

3
 Although the Settlement Agreement did not specifically reference the Consent Judgment entered in connection with
the Rent and Possession Action, Hughes’ agreement to pay “any liens of Penguin Properties” presumably referred to
the Consent Judgment, which remained unsatisfied at the time the Settlement Agreement was executed.

 3
 The claims administrator for Transwood’s insurer issued two separate checks as follows:

(a) a check dated June 22, 2018, in the amount of $5,000.00, made payable to Hughes only, which

was delivered to Hughes on or about June 25, 2018; and (b) a check dated July 19, 2018, in the

amount of $20,000.00, made payable to both Hughes and Holland Law, and which was delivered

to Holland on or about July 21, 2018 (collectively the “Settlement Checks,” or individually a

“Settlement Check”). The claims administrator sent both settlement checks to Roberts Perryman,

and someone from their office actually delivered the checks to Hughes and his attorney. However,

Transwood itself never physically possessed the Settlement Checks.

D. Penguin’s writ of garnishment in the Rent and Possession Action.

 Penguin sought to execute on its rent and possession judgment by garnishing the settlement

proceeds Hughes would receive from Transwood. Penguin filed a garnishment in the Rent and

Possession Action, which was directed to Transwood and sought $15,961.47. The garnishment

was served on Transwood on June 1, 2018, including the standard garnishment interrogatories,

and remained operative until August 30, 2018. Transwood subsequently answered the

interrogatories.

E. Penguin’s exceptions to Transwood’s interrogatory answers served in connection
 with the Garnishment.

 On August 7, 2018, Penguin filed its exceptions to and denials of Transwood’s

interrogatory answers. In particular, Penguin excepted to Transwood’s denial that it was indebted

to Hughes during the 90-day period of the Transwood Garnishment (i.e., June 1, 2018 to August

30, 2018), relying on Transwood’s settlement of the personal injury action with Hughes. In

addition, Penguin alleged that during the garnishment period, Transwood knew that it had an

insurance policy that obligated its insurer to pay the Settlement Amount to Hughes, but Transwood

failed to disclose this information in its interrogatory answers. On the basis of these allegations,

 4
Penguin requested the entry of judgment against Transwood in the amount of $15,961.47, plus

statutory interest from the date of the interrogatory answers.

 On September 14, 2018, Transwood filed its responses to Penguin’s exceptions to its

interrogatory answers, denying that “funds of the debtor [Hughes] came into its possession and

control at any time.” Transwood further asserted that any funds belonging to Hughes as a result

of any settlement between it and Hughes were “directly” sent to Hughes’ counsel by Transwood’s

insurer. However, Transwood did not assert any affirmative defenses or avoidances to Penguin’s

prayer for relief in its exceptions. Specifically, Transwood did not raise the issue of its purported

lack of control over the settlement of the personal injury action and the payment of the settlement

amount to Hughes via the Settlement Checks.

F. Penguin’s other discovery to Transwood.

 While the litigants served the foregoing interrogatory exceptions and responses,

Transwood also objected to the document requests and deposition notices that Penguin had served

on it in an effort to learn more about the settlement of the personal injury action and identify any

garnishable assets of Hughes in its possession or under their control. Penguin eventually received

a copy of the Settlement Agreement and a series of e-mail communications between Holland and

Perryman (and other attorneys at Roberts Perryman) discussing the resolution of the personal

injury action, including how and when the settlement amount would be paid to Hughes. Of

particular note is an e-mail sent by Perryman to Holland, dated May 10, 2018, which stated:

 This is the attached “Notice” that was filed. We have agreed to settle this claim for
 $20,000.00 for bodily injuries and $5,000.00 for property damage subject to you
 and your client resolving the lien. If not resolved, we will need the Court to rule
 whether this Notice of Lien is valid. If we do not have a determination of its non-
 viability, we are going to have to place the lienholder’s name on the settlement
 checks.

(the “Perryman E-mail”).

 5
G. The cross motions for summary judgment in the Rent and Possession Action.

 The parties’ interrogatory answers, exceptions, and response thereto filed in connection

with the garnishment frame the issues to be determined by the circuit court in the garnishment

proceeding arising out of the Rent and Possession Action.4

 Transwood filed a motion for summary judgment against Penguin, which argued that no

authority supports its liability to Penguin under the facts of this case, and further, the proper parties

to garnish in the first place were Hughes and his attorney. 5 Transwood also argued that it could

not be held liable to Penguin because it never had possession of the Settlement Checks. Transwood

further argued that it did not have any control over the Settlement Checks because any funds

belonging to Hughes as a result of the settlement of the personal injury action were actually paid

by Transwood’s insurer via its third-party claims administrator.

 Penguin then filed its own motion for summary judgment against Transwood, which argued

that Transwood was liable to it for the amount of the garnishment (i.e., $15,961.47, plus interest),

pursuant to § 525.080, because: (a) Transwood was indebted to Hughes during the period of the

Transwood Garnishment (i.e., June 1, 2018 to August 30, 2018) by virtue of agreeing to settle the

personal injury action for $25,000.00 on May 10, 2018; and (b) Transwood disregarded the

garnishment by failing to pay Penguin any part of the amount sought, and instead fully satisfied

its debt to Hughes by its insurer’s payment of the Settlement Checks.

4
 Missouri courts have long recognized that in garnishment proceedings, the garnishor’s denials and/or exceptions to
the garnishee’s interrogatory answers serve the same purpose as a petition in an ordinary civil action; likewise, the
garnishee’s responses to the garnishor’s denials and/or exceptions (i.e., the reply) serve the same purpose as an answer
in an ordinary civil action. Accordingly, the issues raised in these filings frame the issues to be tried by the court in
garnishment proceedings. See, e.g., Jenkins v. Jenkins, 243 S.W.2d 804, 807 (Mo. App. 1951); and Rainwater v.
Wallace, 174 S.W.2d 835, 839 (Mo. 1943); see also Rule 90.10(b) and § 525.190.
5
 Transwood’s motion for summary judgment was actually jointly filed with Roberts Perryman, which asserted
additional arguments for granting summary judgment in its favor. However, because the arguments raised by Roberts
Perryman are not pertinent to this appeal, we only address those raised by Transwood.

 6
 On November 15, 2019, the circuit court heard Penguin’s motion for summary judgment

against Transwood and took it under submission. While Transwood had previously not filed any

supporting affidavits, on November 18, 2019, it filed a motion seeking leave to supplement its

response to Penguin’s statement of uncontroverted material facts (the “Motion for Leave”). In

addition, on November 19, 2019, Transwood filed its amended statement of uncontroverted

material facts in support of its own motion for summary judgment against Penguin. Both of the

aforementioned filings contained the affidavit of Bill Sawin (“Sawin”), a purported representative

of Transwood (the “Sawin Affidavit”).6 The Sawin Affidavit contains two specific statements that

attempt to address the core issue in this case. First, Sawin attested: “During the period of

Garnishment, Transwood, Inc. had no legal control or possession of any settlement funds owed to

David Hughes.” Second, Sawin attests: “During the period of the Garnishment, Transwood, Inc.

did not have possession, control, or charge of any check or property of the debtor [Hughes].”7

6
 We observe that the Sawin Affidavit omits any statement that the facts attested to therein are based on Sawin’s
personal knowledge, as required by Rule 74.04(e) and Missouri case law. See, e.g., Gateway Metro Federal Credit
Union v. Jones, 603 S.W.3d 315, 319-22 (Mo. App. E.D. 2020). While we recognize that there is no “magic phrase”
to satisfy the personal knowledge requirement, id. at 319, we further observe that the Sawin Affidavit also omits any
statement regarding Sawin’s position of employment or other affiliation with Transwood from which his personal
knowledge could reasonably be inferred. Rather, in the introductory “COMES NOW” sentence, Sawin simply attests
that he is “of Transwood, Inc.” In addition, Sawin simply attests that he is over the age of twenty-one (21) and “legally
competent to make the statements made herein.”

In its memorandum in opposition to Transwood’s Motion for Leave (filed on November 19, 2018), Penguin observed
that the Sawin Affidavit is “rife with legal conclusions, not facts.” However, it does not appear that Penguin objected
to the Sawin Affidavit on the basis that Sawin lacked personal knowledge of the statements attested to therein.
Although the trial court did not directly address the issue of Sawin’s lack of personal knowledge in its judgment
granting Penguin’s motion for summary judgment, we presume the trial court’s finding in this regard to be in
accordance with the result reached. Regardless, because we need not defer to any of the trial court’s findings and
apply the same criteria as the trial court in determining whether summary judgment is proper, see Green, 606 S.W.3d
at 115; and ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc
1993), we find that the foregoing statements in the Sawin Affidavit are insufficient to establish Sawin’s personal
knowledge of the statements attested to therein, and we conclude that the Sawin Affidavit does not constitute
competent evidence that can be considered with respect to either Transwood’s opposition to Penguin’s motion for
summary judgment or in support of Transwood’s own motion for summary judgment against Penguin.
7
 As explained in the Discussion below (see infra Section III(D)(2)(b)), ¶¶ 10 and 11 of the Sawin Affidavit amount
to legal conclusions (not facts), and thus, they also cannot be the basis for deciding any summary judgment motion.

 7
 On December 17, 2019, the circuit court held a hearing as to: (a) Transwood’s Motion for

Leave; (b) Penguin’s motion for summary judgment against Transwood; and (c) Transwood’s

cross-motion for summary judgment against Penguin. The circuit court thereafter took these

motions (and an additional motion not pertinent to this appeal) under submission.

 By “Judgment and Order,” dated June 19, 2020, the circuit court ruled on the motions as

follows:

 (a) Granted Transwood’s Motion for Leave;

 (b) Granted Penguin’s motion for summary judgment against Transwood; and

 (c) Denied Transwood’s cross-motion for summary judgment against Penguin.

 In granting Penguin’s motion for summary judgment against Transwood, the circuit court

first held that Transwood was indeed a proper party to garnish. Without substantial explanation,

the circuit court simply noted that, “[a] party is properly garnished if they are liable to the judgment

debtor,” and cited Tom Houlihan Men’s Wear Corp. v. Wilkerson, 407 S.W.2d 58, 60 (Mo. App.

1966). Having addressed that important threshold issue, the circuit court then held that Transwood

was indeed liable to Penguin, pursuant to § 525.080, because: (1) as a result of the settlement of

the Personal Injury Action, it owed a separate debt to Hughes that existed during the garnishment

period; and (2) despite notice of the garnishment, Transwood failed to pay Penguin any of the

garnishment amount directly, or in the alternative, failed to interplead the garnishment amount into

the circuit court pursuant to § 525.070; rather, Transwood fully satisfied its debt to Hughes with

two checks from Transwood’s liability insurance carrier.

 Following the entry of the “Judgment and Order,” Transwood timely filed its notice of

appeal on July 29, 2020. However, Transwood has not appealed the circuit court’s denial of its

own motion for summary judgment against Penguin. This appeal followed. We affirm.

 8
 II. Standard of Review

 The Supreme Court of Missouri recently affirmed the standard of review for summary

judgment as follows in Green v. Fotoohighiam:

 The trial court makes its decision to grant summary judgment based on the
 pleadings, record submitted, and the law; therefore, this Court need not defer to the
 trial court’s determination and reviews the grant of summary judgment de novo. In
 reviewing the decision to grant summary judgment, this Court applies the same
 criteria as the trial court in determining whether summary judgment was proper.
 Summary judgment is only proper if the moving party establishes that there is no
 genuine issue as to the material facts and that the movant is entitled to judgment as
 a matter of law. The facts contained in affidavits or otherwise in support of a party’s
 motion are accepted as true unless contradicted by the non-moving party’s response
 to the summary judgment motion. Only genuine disputes as to material facts
 preclude summary judgment. A material fact in the context of summary judgment
 is one from which the right to judgment flows.
 ***
 The record below is reviewed in the light most favorable to the party against whom
 summary judgment was entered, and that party is entitled to the benefit of all
 reasonable inferences from the record. However, facts contained in affidavits or
 otherwise in support of the party’s motion are accepted as true unless contradicted
 by the non-moving party’s response to the summary judgment motion.

606 S.W.3d 113, 115-16 (Mo. banc 2020) (quoting Goerlitz v. City of Maryville, 333 S.W.3d 450,

452-53 (Mo. banc 2011)). “In addition, the non-movant must support denials with specific

references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial. Rule

74.04(c)(2), (c)(4).8 Facts not properly supported under Rule 74.04(c)(2) or (c)(4) are deemed

admitted.” Id. at 116 (quoting Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC, 422 S.W.3d

312, 320 (Mo. banc 2014)).

 III. Discussion

A. Introduction.

 Transwood raises two points on appeal. In its first point, Transwood argues that the circuit

court erred in granting Penguin’s motion for summary judgment because it never had control or

8
 All rule references are to Missouri Supreme Court Rules (2020).

 9
possession of the two Settlement Checks from its insurer that satisfied its debt to Hughes. In its

second point, Transwood argues that the circuit court erred in granting Penguin’s motion for

summary judgment because Transwood was an improper party to garnish in the first place.

Because of the interrelated nature of Transwood’s two points on appeal, we address them together.

 Transwood’s appeal presents an issue of first impression in Missouri regarding a

garnishee’s liability to a garnishor, pursuant to § 525.080, where the garnishee has settled a

personal injury action with the judgment debtor of the garnishor, and the funds to satisfy the

settlement are paid by the garnishee’s insurance carrier to the judgment debtor during the period

of garnishment and in disregard thereof.

 In its response to Penguin’s motion for summary judgment against it, Transwood raised

the same arguments it raises now on appeal: (1) it never physically possessed or controlled the

Settlement Checks; and (2) it was not a proper party to be garnished in the first place. In addition,

with respect to Penguin’s argument that it was not necessarily garnishing the Settlement Checks

(but rather, Transwood’s underlying debt to Hughes), Transwood raised the issue of its control

over the settlement with Hughes, arguing it had no control over the underlying settlement; instead,

Transwood claimed its insurer controlled the entire process. We find that the issue of Transwood’s

purported lack of control over the settlement with Hughes constitutes an affirmative defense to the

garnishment for purposes of these garnishment proceedings, which Transwood was required to

plead and prove under Missouri law. However, as further discussed in the Analysis section below,

even if Transwood’s purported lack of control over the settlement of the personal injury action

constituted a viable affirmative defense under Missouri law (which we need not decide and

expressly decline to address), Transwood failed to meet its burden of both pleading and proving

its purported lack of control over the settlement process with Hughes, waiving this defense.

 10
 However, before further addressing these issues, a brief examination of Missouri

garnishment law is warranted.

B. Missouri garnishment law.

 The Supreme Court of Missouri has generally recognized that “[g]arnishment in aid of

execution is an incidental remedy whereby a plaintiff seeks to collect the judgment by reaching

the defendant’s property in the hands of a third party.” State ex rel. Bagnell Inv. Co. v. Luten, 647

S.W.2d 539, 541 (Mo. banc 1983). More recently, Missouri courts have similarly recognized that,

“garnishment is a proceeding in rem that brings within the jurisdiction and power of the trial court

a debt or chose of action, i.e., a ‘res,’ and impresses that res with the lien of the judgment in aid of

execution.” Grissum v. Soldi, 108 S.W.3d 805, 808 (Mo. App. S.D. 2003).

 “[T]he liability of a garnishee is measured by its liability to the defendant.” Tom Houlihan

Men’s Wear v. Wilkerson, 407 S.W.2d 58, 60 (Mo. App. 1966); see also Jenkins v. Jenkins, 243

S.W.2d 804, 807 (Mo. App. 1951).

 “Garnishment proceedings are governed by Chapter 525, RSMo … and our Rule 90.”

Luten, 647 S.W.2d at 540; accord Bair, 507 S.W.3d at 629. The core Missouri garnishment statute

is § 525.040, titled “Effect of notice of garnishment—priority based on date of service.” Sub-

section .1 provides, in pertinent part, as follows:

 Notice of garnishment … shall have the effect of attaching all personal property,
 money, rights, credits, bonds, bills, notes, drafts, checks or other choses in action
 of the defendant in the garnishee’s possession or charge, or under his or her control
 at the time of the service of the garnishment, or which may come into his or her
 possession or charge, or under his or her control, or be owing by him or her,
 between that time and the time of filing his or her answer….

(Emphasis added).

 Next, Rule 90.04, titled “Effect of Service of Writ of Garnishment and Summons –

Priority,” similarly provides, in pertinent part, as follows:

 11
 The service of the writ of garnishment and summons attaches the property subject
 to garnishment in the garnishee’s possession or charge or under the garnishee’s
 control at the time the writ of garnishment and summons is served and continuing
 through the return date of the writ….

In addition, Rule 90.01(d) defines the term “property subject to garnishment,” as used in Rule 90,

as follows: “[A]ll goods, personal property, money, credits, bonds, bills, notes, checks, choses in

action, or other effects of debtor and all debts owed to debtor” (emphasis added).

 Missouri courts have recognized that “[t]ogether these rules ‘unequivocally provide that it

is service of those documents that attaches the subject property, i.e., jurisdiction over the res, and

nothing else suffices.’” Bair, 507 S.W.3d at 630 (citing Grissum, 108 S.W.3d at 809)).

C. Analysis.

 Transwood does not challenge Penguin’s compliance with any of the technical

requirements in connection with the garnishment. Instead, Transwood contends it never had

control of the Settlement Checks from its insurer and is not liable under § 525.080. Penguin has

repeatedly maintained that it was not garnishing the Settlement Checks; rather, it was garnishing

the debt Transwood owed to Hughes by virtue of the Settlement Agreement. Therefore, whether

Transwood ever physically possessed the checks is irrelevant. This is because both § 525.040 and

Rule 90.04 provide that a garnishment attaches to any debts owed to the judgment debtor. In

addition, Missouri courts have clearly recognized that a garnishment attaches to any debts owed

by the garnishee to the judgment debtor. See Atwood v. Hale, 17 Mo. App. 81, 88 (1885).

 Missouri courts have similarly recognized that “[i]t is well settled that ‘* * * the service of

garnishment has the effect of attaching any money of defendant then in the hands of the garnishee

or that may be owing by the garnishee to defendant between that time and the time of filing the

answer of the garnishee.’” McEwan v. Sterling State Bank, 5 S.W.2d 702, 706 (Mo. App. 1928)

(emphasis added) (quoting Stevenson v. Standard Adding Mach. Co., 131 S.W. 162, 165 (Mo.

 12
App. 1910)). McEwan further noted that “the object of garnishment proceedings is to impound or

appropriate a specific sum of money belonging to and due defendant and owing by the garnishee.”

Id. (emphasis added). Finally, McEwan noted the important duties of both the garnishee and the

judgment debtor:

 After the service of the garnishment writ the debt or property in the hands of the
 garnishee is regarded as in custodia legis, and he becomes custodian of the property
 for the purpose of the garnishment. His duty is to retain the fund or property even
 against the true owner, to be disposed of in accordance with the order of the court.
 The garnishee is a mere stakeholder and must not do any voluntary act to the
 prejudice of either plaintiff or defendant. He cannot pay the principal defendant in
 the suit nor can the latter collect the debt from the former.

Id. (internal citations omitted).

 In this case, there is no dispute that Transwood owed Hughes $25,000.00 during the period

of the garnishment, which remained unsatisfied when Transwood was first served on June 1, 2018.

We find that the garnishment attached Transwood’s debt to Hughes pursuant to § 525.040 and

Rule 90.04. Accordingly, the issue of whether Transwood ever physically possessed the

Settlement Checks is irrelevant.9

 We must next examine whether Transwood breached its duty to Penguin, rendering

Transwood liable under § 525.080.

 As discussed, § 525.080.1 governs a garnishee’s liability to a garnishor, and provides, in

pertinent part, as follows:

 If it appear that a garnishee, at or after his or her garnishment, was possessed of any
 property of the defendant, or was indebted to him or her, the court, or judge in
 vacation, may order the delivery of such property, or the payment of the amount
 owing by the garnishee, to the sheriff, into court, or to the attorney for the party on
 whose behalf the order of garnishment was issued, at such time as the court may
 direct….

9
 Of course, if Transwood had possessed the Settlement Checks during the period of the Transwood Garnishment, that
would create a separate attachment issue. However, that issue is not before this Court.

 13
(Emphasis added). Although § 525.080 is the logical starting point for our liability analysis, it

alone does not address the core issue given the highly fact-specific scenario presented. This is

because Transwood has raised the issue of its control over the settlement with Hughes, which it

claims was exclusively controlled by its insurer. However, we must initially analyze the threshold

issue of which party bears the burden of proof with respect to this issue in the context of the

summary judgment motion.

 As further explained below, Transwood bore the burden of pleading and proving that it did

not control the settlement process, as this constitutes an affirmative defense in this garnishment

proceeding. However, Transwood failed to properly raise the issue of its control over the

settlement process in its response to Penguin’s exceptions to its interrogatory answers, which

constituted its answer in this garnishment proceeding. Our decision flows from the general rule

set forth in Jenkins v. Jenkins, 243 S.W.2d 804 (Mo. App. 1951), as well as the practical

consideration that Transwood would have exclusive knowledge of its relationship with its own

insurer, including the terms of its insurance contract. Therefore, Penguin only needed to allege

and prove Transwood’s debt to Hughes, which shifted the burden to Transwood to plead and prove

its lack of control.

 In Jenkins, the St. Louis Court of Appeals affirmed the circuit court’s judgment in favor of

the garnishor, holding that the garnishee, an attorney, had no ownership interest in a settlement

check made jointly payable to the garnishee attorney and his client, which the judgment creditor

of the attorney’s client had garnished. Id. at 807. Jenkins ultimately held that the joint check was

garnishable, notwithstanding the attorney’s purported defense of an offset for fees advanced. Id.

In addressing the garnishee’s purported offset defense, Jenkins discussed the general rule

mentioned above that the garnishor’s denial of the garnishee’s interrogatory answer, along with

 14
the garnishee’s reply, frame the issues to be tried in a garnishment proceeding. Id. More to the

point, Jenkins stated the parties’ respective burdens of proof as follows:

 [W]here such a debt is pleaded by the [garnishor] plaintiff’s denial of the
 garnishee’s answer, the garnishee must set up the defenses, he desires to raise, in
 his reply, and where the [garnishor] plaintiff conclusively proves a debt owing to
 the defendant by the garnishee, as was done here, the garnishee must then put on
 his affirmative defenses.

Id. Because the garnishee attorney in Jenkins failed to properly plead and prove his purported

affirmative defense (which the Court of Appeals noted was only raised via “general statements

and conclusions” in the record), the garnishment of the check was valid. Id.

 Therefore, although Jenkins was tried to the court (as opposed to being disposed of via a

summary judgment motion), we hold that Jenkins establishes the appropriate approach for

determining the garnishor’s and the garnishee’s respective burdens of proof under the particular

facts of this case, which are as follows: Penguin must first plead and prove Transwood’s underlying

debt to Hughes, which shifts the burden to Transwood to plead and prove its affirmative defense

of lack of control over the settlement process with Hughes (to the extent that lack of control would

be a recognized affirmative defense under the facts of this case). Having established the parties’

respective burdens of proof, we next analyze whether the parties satisfied each of those burdens.

 With respect to Penguin’s initial burden to plead Transwood’s underlying debt to Hughes,

we must analyze Penguin’s exceptions to and denials of Transwood’s interrogatory answers.

Regarding the core issue on appeal, Penguin excepted to Transwood’s denial that it was indebted

to Hughes during the 90-day period of the garnishment (i.e., June 1, 2018 to August 30, 2018),

relying on Transwood’s settlement of the personal injury action with Hughes. Specifically,

Penguin alleged as follows (using the number scheme therein):

 3. Transwood, Inc. was a defendant in a personal injury case which on
 July 18, 2018 settled in federal court, styled David Hughes v. Transwood, Inc., No.

 15
 4:17-cv-1943-PLC and after payment of the settlement, on July 24, 2018, Hughes
 dismissed the case.
 4. Upon information and belief, the case was settled in Hughes’ favor
 for no less than $20,000.00, the settlement amount was paid on July 19, 2018, and
 the settlement funds were subject of the garnishment.
 5. Upon information and belief, during the period of the garnishment,
 Transwood and Hughes entered into a settlement agreement or other similar
 document pursuant to which Transwood agreed to pay to Hughes the sum of
 $20,000.00 as and for the settlement.
 6. Consequently, during the garnishment period, Transwood was
 indebted to the debtor David Hughes in the amount of the settlement of $20,000.00.

We find that the foregoing allegations in Penguin’s exceptions sufficiently raised the issue of

Transwood’s indebtedness to Hughes for purposes of the garnishment proceeding.

 Although Transwood’s reply to Penguin’s exceptions vaguely raised the issue of its

insurer’s involvement in the settlement process, it failed to make any allegations regarding its

purported lack of control over the settlement process, where it simply alleged as follows:

 1. Garnishee denies that funds of the debtor came into its possession
 and control at any time.
 2. To the contrary, any funds belonging to the debtor as a result of any
 settlement between the debtor and Garnishee were sent to the debtor’s counsel
 directly by the Garnishee’s insurer.

In addition, although Transwood’s interrogatory answers denied that it owed a debt to Hughes,

Transwood failed to reaffirm this claim in its reply with any specific factual allegations with

respect thereto.

 We find that these allegations did not raise the issue of Transwood’s purported lack of

control over the settlement process for purposes of the garnishment proceeding.

 In its motion for summary judgment against Transwood, Penguin presented evidence of

Transwood’s indebtedness to Hughes, asserting as follows in its statement of uncontroverted

material facts (“SUMF”): “By May 10, 2018, Transwood, through its agents and attorneys, had

agreed to pay Hughes and became indebted to Hughes in the amount of $25,000.00, the amount of

 16
his settlement with Transwood,” and attaching a copy of the Perryman E-mail. In addition,

Penguin alleged that “[t]he amount owed to Hughes was not paid until June 25, 2018 ($5,000.00)

and July 21, 2018 ($20,000.00),” and attached at copy of a document, dated June 25, 2018,

reflecting Hughes’ receipt of the $5,000.00 Settlement Check, as well as a complete copy of the

$20,000.00 Settlement Check. Finally, Penguin alleged that “[d]uring the period of garnishment,

the garnishee had under its control, possession and charge a debt due the defendant which was

levied on by plaintiff but in disregard of the garnishment, Transwood failed to pay it to plaintiff.”

 While Transwood denied Penguin’s allegations, it only attached the Sawin Affidavit in

support of its denials, in which Sawin makes two statements that attempt to address the core issue

in the case. First, Sawin attests: “During the period of Garnishment, Transwood, Inc. had no legal

control or possession of any settlement funds owed to David Hughes.” Second, Sawin attests:

“During the period of the Garnishment, Transwood, Inc. did not have possession, control, or charge

of any check or property of the debtor [Hughes].”

 We find that these statements in the Sawin Affidavit do not sufficiently controvert

Penguin’s SUMF for three reasons. First, as discussed at length in footnote 5, the Sawin Affidavit

omits any statement that the facts attested to therein are based on Sawin’s personal knowledge, as

required by Rule 74.04(e) and Missouri case law. Thus, as a general matter, the Sawin Affidavit

does not constitute competent evidence that can be considered with respect to Transwood’s

opposition to Penguin’s motion for summary judgment.

 Second, even if we overlooked the first deficiency, the Sawin Affidavit amounts to nothing

more than legal conclusions (not facts), and so they also cannot be the basis for deciding any

summary judgment motion. See, e.g., Scott v. Ranch Roy-L, Inc., 182 S.W.3d 627, 635 (Mo. App.

E.D. 2005) (recognizing that “[l]egal conclusions are not admissible facts,” and further, “[a]n

 17
affidavit’s proper function is to state facts, not conclusions;” and thus, “[a]n affidavit that is

conclusory does not maintain a fact dispute for a jury”).

 Third, the Sawin Affidavit does not address the core issue raised by Penguin’s SUMF:

Transwood’s underlying debt to Hughes; rather, these statements simply chase the red herring

issue of the undisputed fact that Transwood never physically possessed the Settlement Checks.

However, Penguin has always maintained that it was garnishing Transwood’s debt to Hughes (not

the Settlement Checks).

 Therefore, given that Transwood failed to controvert the key allegations in Penguin’s

SUMF (which established Transwood’s undisputed debt to Hughes), we find that Penguin has

satisfied its initial burden with respect to this garnishment proceeding. Accordingly, Transwood’s

debt to Hughes attached upon service of the garnishment on June 1, 2018. At that time, Transwood

had a duty to either: (1) pay the then-outstanding amount of the garnishment to Penguin directly;

or (2) interplead said amount into the circuit court, pursuant to § 525.070, and permit the court to

determine whether Penguin or Hughes was entitled to the funds. However, Transwood took

neither of these actions. Rather, Transwood satisfied its debt to Hughes when its insurer disbursed

the Settlement Checks to Hughes and his attorney.

 In Point I, Transwood contends it never had control over the settlement checks. However,

Transwood failed to raise this issue in any affirmative defense, but simply denied that any “funds

of the debtor [Hughes]” ever came into its possession and control, and further asserted that any

“funds” belonging to Hughes as a result of the Settlement Agreement “were sent to the debtor’s

counsel directly” by its insurer. Rather, Transwood has attempted to raise the issue of its lack of

control over its settlement with Hughes in the argument section of its briefing to the circuit court

and to this Court.

 18
 The only purported evidence Transwood offered in opposition to Penguin’s motion for

summary judgment was the Sawin Affidavit. However, for the same reasons we find that the

Sawin Affidavit failed to controvert Penguin’s SUMF, we likewise find that it cannot possibly

support these statements in Transwood’s briefing, most notably Transwood’s bald claim that the

decision to settle the Personal Injury Action with Hughes was under the “exclusive control” of its

insurer. Transwood could have easily attached an affidavit (or submitted other admissible

evidence) to its denial of the relevant paragraphs of Penguin’s SUMF (which it is required to do

under Rule 74.04(c)(2)), or alternatively, Transwood could have filed its own statement of

additional facts that remain in dispute, pursuant to Rule 74.04(c)(2), setting forth the relevant facts

(and evidentiary support) with respect to its affirmative defense that its insurer controlled the

settlement with Hughes. However, Transwood failed to avail itself of either option.10 As such, to

the extent Transwood’s insurer may have controlled the decision to settle the personal injury action

with Hughes, we hold that Transwood waived any affirmative defense based on its purported lack

of control.

 Accordingly, we conclude that when the dust settled from the extensive factual and

procedural history of this case, we are left with the following undisputed key facts: (1) as of May

17, 2018, Transwood owed Hughes $25,000.00 pursuant to the Settlement Agreement entered into

in connection with the personal injury action11; (2) the garnishment was served on June 1, 2018,

10
 We note that Transwood made similar statements in its brief to this Court regarding its insurer’s control over the
settlement with Hughes, but likewise failed to cite any evidentiary support. Indeed, when asked at oral argument,
Transwood’s counsel could not point to any supporting evidence in the summary record before the circuit court (other
than the deficient Sawin Affidavit) regarding its purported lack of control of the settlement with Hughes, including
whether it even requested that its insurer interplead the amount of the Transwood Garnishment into the circuit court,
pursuant to § 525.070, for the court to determine whether Penguin or Hughes were ultimately entitled to these funds.
11
 To the extent Transwood has argued that because its insurer was actually indebted to Hughes, that somehow relieved
it of liability to Penguin, this argument is without merit. This is because, first, Transwood failed to plead and prove
its insurer’s liability to Hughes. Second, even if Transwood had properly pleaded and proved that its insurer was, in
fact, liable to Hughes for its debt, this would not relieve Transwood of its liability to Penguin for disregarding its
garnishment because Transwood would remain primarily liable to Hughes, if, for example, its insurer became

 19
at which time Transwood’s $25,000.00 debt to Hughes remained unsatisfied; (3) despite

knowledge of the garnishment, Transwood disregarded the garnishment and fully satisfied its debt

to Hughes through payment of the two Settlement Checks from Transwood’s insurer to Hughes

and his attorney. As such, we hold that Penguin has established Transwood’s liability to it for the

outstanding amount of the Transwood Garnishment pursuant to § 525.080, notwithstanding that

Transwood never physically possessed the Settlement Checks, and notwithstanding Transwood’s

unpled and unproven argument that it did not control the settlement of the personal injury action

with Hughes, including the disposition of the Settlement Checks.

 Finally, in Point II, Transwood argues that it was not a proper party to be garnished in the

first place. Transwood apparently misapprehends the purpose of a garnishment. Based on the

foregoing analysis of Missouri garnishment law, it is rudimentary that the purpose of a garnishment

is to permit a judgment creditor to identify and attach any money or other property possessed or

controlled by a third party that belongs to the judgment debtor, as well as to identify and attach

any debts owing by a third party to the judgment debtor, which can be used to satisfy the judgment

debtor’s debt to the judgment creditor. Wilkerson, 407 S.W.2d at 60. The key concept, of course,

is that garnishments are properly served on any third party possessing or controlling any such

money or property, or any third party owing such a debt. However, Transwood premised its

argument on the notion that it was not a proper party to be garnished in the first place simply

because it never physically possessed the two Settlement Checks. Although it appears that

Transwood indeed never physically possessed the two Settlement Checks, we emphasize again

that Penguin was actually garnishing Transwood’s debt to Hughes by virtue of the Settlement

insolvent or otherwise defaulted on its obligation to Hughes for any reason, with its insurer being only secondarily
liable to Hughes. Therefore, Transwood’s liability to Penguin pursuant to § 525.080 is not affected by its insurer’s
secondary liability to Hughes.

 20
Agreement (and not necessarily the Settlement Checks). Accordingly, Transwood’s argument that

it was not a proper party to be garnished in the first place is without merit.

 Both of Transwood’s points on appeal are denied.

 IV. Conclusion

 For these reasons, we hold that, pursuant to Rule 74.04(c), Penguin has established that

there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law.

Transwood’s disregard of the garnishment renders it liable to Hughes, pursuant to § 525.080, in

the amount of $15,997.47, plus accrued interest and costs permitted by law. For these reasons, the

judgment of the circuit court granting summary judgment in favor of Penguin is affirmed.

 _______________________________
 Kelly C. Broniec, Judge

Colleen Dolan, P.J. and
Robert M. Clayton III, J. concur.

 21